**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| **CHICAGO H&S HOTEL PROPERTY, LLC,** | ) | |
| **Debtor.** | ) | |
| **CHICAGO TITLE AND TRUST CO.,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 09 C 4492** |
| **CHICAGO H&S HOTEL PROPERTY, LLC, et al.,** | ) | **Appeal from the United States Bankruptcy Court for the Northern District of Illinois** |
| **Defendants.** | ) | |
| | ) | **Case Nos. 07 B 20088 & 08 A 523** |
| **MIRABELLA FOUNDATION,** | ) | |
| **Appellant.** | ) | |
| **SHAW GUSSIS FISHMAN GLANTZ WOLFSON & TOWBIN, LLC,** | ) | |
| **Appellee.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Mirabella Foundation appeals the bankruptcy court's order directing payment of attorney's fees to the law firm of Shaw Gussis Fishman Glantz Wolfson & Towbin, LLC

out of settlement funds that were to be distributed to Mirabella. For the reasons stated below, the Court remands the case in part to the bankruptcy court for further proceedings.

## Background

On September 29, 2008, Shaw Gussis and Mirabella entered into a retainer agreement pursuant to which Shaw Gussis agreed to represent Mirabella in connection with a Chapter 11 case involving Chicago H&S Hotel Property and a related adversary proceeding. The adversary proceeding was filed by Chicago Title and Trust Co., which filed an interpleader action regarding deposits made by the debtor's investors. Mirabella claimed an interest in the deposits as the assignee of one of the investors. Farhan Naseer, a creditor of that investor, disputed Mirabella's claim and argued that a judgment lien that he asserted had priority over whatever interest Mirabella had. Shaw Gussis represented Mirabella in (among other things) its dispute with Naseer.

Shaw Gussis' fee agreement provided that it would submit invoices to Mirabella on a monthly basis for attorney's fees and other expenses and that Mirabella was "responsible for abiding by the fee arrangement and for prompt payment of the Firm's invoices." Appellee Br., Group Ex. C 2, 4. Shaw Gussis also required Mirabella to pay a $7,500 advance retainer. *Id.* 4.

On October 28, 2008, the bankruptcy court granted Naseer's motion to transfer the interpleader action to the United States Bankruptcy Court for the Southern District of Florida. The interpleaded funds were deposited with the clerk of the bankruptcy court here in Chicago.

Shaw Gussis continued to represent Mirabella after the transfer of the case. In an e-mail dated December 16, 2008 to Frank Lara, its contact at Mirabella, Shaw Gussis stated that

> [p]ursuant to [their] telephone discussion . . . this e-mail confirms [Lara]/Shaw Gussis' authority to propose a settlement offer on behalf of Mirabella in the sum of $80,000 to Naseer and his counsel to resolve the adversary proceeding 08-01760 pending in the United States Bankruptcy Court for the Southern District of Florida. This e-mail further confirms that a $20,000 carveout of the monies thereafter payable to Mirabella shall be paid simultaneously to Shaw Gussis.

Appellee Br., Group Ex. B 23. By December 31, 2008, Mirabella had incurred $26,572.30 in legal fees and other expenses. *Id.* 18.

On January 20, 2009, Shaw Gussis filed a motion to withdraw as Mirabella's counsel. The motion included an assertion by Shaw Gussis of a lien on the interpleaded funds. Shaw Gussis served the motion on Mirabella and on Naseer's counsel. *See* Appellant Br. 5, Appellant Reply 12-13, Appellee Br. 2. The bankruptcy court granted Shaw Gussis' motion on January 28, 2009.

Mirabella and Naseer later entered into a settlement and agreed to divide the interpleaded funds. On May 12, 2009, the bankruptcy court entered an order effectuating the settlement. The order provided that Mirabella would receive $60,000. On May 14, 2009, before the Clerk disbursed the settlement proceeds, Shaw Gussis filed a motion asserting statutory and equitable liens amounting to $19,505.80 on Mirabella's portion of the proceeds. Appellee Br., Group Ex. C 1.

On May 26, 2009, the bankruptcy court ruled that Shaw Gussis had not established an entitlement to an attorney's lien under the Illinois Attorney's Lien Act.

The court ruled that the Act requires strict compliance with its requirements before a statutory lien may attach. May 26, 2009 Tr. 5. The court concluded that Shaw Gussis had not strictly complied with the statute's requirements, because "the parties against whom the attorney's clients may have had suits, claims, or causes of action were not served personally or by registered mail." *Id.* 6.

The bankruptcy court determined, however, that Shaw Gussis had an equitable lien on the settlement proceeds based on "an obligation owing from Mirabella to Shaw Gussis pursuant to the original retainer agreement calling for Shaw Gussis to be compensated for its reasonable services on an hourly basis." *Id.* 7. The bankruptcy court determined that the settlement proceeds were "a *res* to which the obligation can attach." *Id.* 8. Believing that "Shaw Gussis [was] not entitled to automatically receive the 19,000 odd dollars that it's seeking," the bankruptcy court gave Mirabella "the opportunity to make any specific objections to the itemization of services that Shaw Gussis . . . provided." *Id.* The bankruptcy court later entered an order awarding Shaw Gussis $19,505.80 from the settlement proceeds. June 3, 2009 Tr. 2-3.

## Discussion

The Court reviews the bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *See In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995); *Matter of Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994).

### A. Statutory lien

An Illinois statute grants an attorney a lien "upon all claims, demands and causes of action" pursued on behalf of the attorney's client for an amount agreed upon by the

attorney and client or, in the absence of an agreement, for reasonable attorney's fees and costs incurred. 770 ILCS 5/1. Enforcement of a statutory lien requires notice in writing to the client's adversary, "which service may be made by registered or certified mail." *Id*. The lien attaches to "any verdict, judgment or order entered and to any money or property which may be recovered . . . from and after the time of service of the notice." *Id*. Under the statute, a courts of competent jurisdiction "shall . . . adjudicate the rights of the parties and enforce the lien," provided the attorney or his client files a petition "on not less than 5 days' notice to the adverse party." *Id.*

Shaw Gussis contends that the statute provides that service *may* be made by registered or certified mail and that as a result, technical compliance is not required, so long as no party is prejudiced by the method of notice. Shaw Gussis asserts that because Mirabella can claim no prejudice, the notice that the firm gave met the statutory requirements. Mirabella contends that the statute must be strictly construed and that Shaw Gussis did not give proper notice of its lien because it did not serve notice by registered or certified mail and served it not on Naseer but on his attorney.

The Attorney's Lien Act is, in fact, construed strictly. "[A]ttorneys who do not strictly comply with the Act have no lien rights." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95, 759 N.E.2d 906, 912 (2001); *see also Matthews v. Homecomings Fin. Network, Inc.*, 264 Fed. Appx. 536, 538 (7th Cir. 2008)[1] ("Because the lien is governed by statute, strict compliance is necessary to perfect a lien."). Illinois courts have found that an

[1] Though the *Matthews* decision is designated as "unpublished," because it was issued after January 1, 2007, the Court properly relies on it. Fed. R. App. P. 32.1.

attorney who fails to serve a party via registered or certified mail has no lien under the statute. *Progressive Universal Ins. Co. v. Taylor*, 375 Ill. App. 3d 495, 501, 874 N.E.2d 910, 915 (2007) ("[A]n attorney who mails a notice of lien by ordinary mail, instead of registered or certified mail, has no lien."); *see also Cazalet v. Cazalet*, 322 Ill. App. 105, 108, 54 N.E.2d 61, 63 (1944).

More importantly, Illinois law requires an attorney who wishes to assert a statutory lien to give actual notice to the client's adversary in the underlying proceeding. *TM Ryan Co. v. 5350 S. Shore, LLC*, 361 Ill. App. 3d 352, 357, 836 N.E.2d 803, 808 (2005) (finding no attorney's lien where "there is no proof [that client's adversary] had actual notice of [attorney's lien]."); *Unger v. Checker Taxi Co.*, 30 Ill. App. 2d 238, 242, 174 N.E.2d 219, 221 (1961) (finding no lien where "there was no acknowledgment of the receipt of any notice of any attorney's lien by defendant."). Service on the adversary's attorney is insufficient to meet this standard. *Cazalet*, 322 Ill. App. at 108, 54 N.E.2d at 63 ("[I]t has been specifically held in the construction of said attorney's lien act . . . that notice to the attorney is not sufficient nor binding upon the defendant, but proof of actual notice to the defendant is necessary."); *see also Matthews*, 264 Fed. Appx. at 538.

Shaw Gussis notified opposing counsel of its interest in the lien, but it offered no evidence that Naseer, Mirabella's adversary, got actual notice of the lien through his attorney. As a result, the bankruptcy court correctly concluded that Shaw Gussis' claimed statutory lien was ineffective because the law firm did not strictly comply with the statute.

Alternatively, Shaw Gussis contends that strict adherence to the statute is necessary only when an attorney seeks to enforce a lien against a third party. Proper notice under the Act is required, however, even when the attorney enforces the lien against his own client. *See Scott v. NY, C. & St. L. R. Co.*, 159 F.2d 618, 620 (7th Cir. 1947) ("Under this statute, *after* notice [is] given as provided therein, an attorney has two remedies to protect his fee for services to his client. First, . . . he may pursue his lien by perfecting the lien through proceedings against the fund or property. Secondly, he may as assignee sue the debtor or his client for his interest in the asserted claims." (emphasis added)).

**B.    Equitable lien**

Even if an attorney fails to perfect a statutory attorney's lien, "equitable liens exist in Illinois which attorneys may enforce in order to collect their fees." *Dep't. of Pub. Works of the State of Ill. v. Exch. Nat'l Bank*, 93 Ill. App. 3d 390, 393, 417 N.E.2d 1045, 1048 (1981); *see also McKee-Berger-Mansueto, Inc. v. Bd. of Educ. of the City of Chi.*, 691 F.2d 828, 835-36 (7th Cir. 1982). An equitable assignment is "such an assignment as gives the assignee a title which, though not cognizable at law, equity will recognize and protect." *McKee-Berger-Mansueto*, 691 F.2d at 836 (internal quotation marks and citation omitted).

"The essential elements of an equitable lien are (1) a debt, duty or obligation owing by one person to another, and (2) a *res* to which that obligation fastens." *In re Brass Kettle Rest., Inc.*, 790 F.2d 574, 575 (7th Cir. 1986) (internal quotation marks and citations omitted). To satisfy the latter element, "an attorney must establish that an

equitable assignment exists under which the client assigned to the attorney a portion of a fund." *Matthews*, 264 Fed. Appx. at 538.

"Illinois courts have drawn a distinction between an actual assignment of a portion of a fund and a mere personal promise by the client to pay attorneys [sic] fees in an amount equal to a specified portion of the fund to be recovered or out of the proceeds of such a fund." *McKee-Berger Mansueto*, 691 F.2d at 836; *see also In re Bliss*, 124 F.2d 819, 821 (7th Cir. 1941) ("[T]he doctrine . . . presupposes a present appropriation or transfer of the fund (as distinguished from a mere executory promise or personal covenant to pay out of the fund)"). Because "[a] mere promise to pay does not confer an assignment of a portion of a fund . . . [t]he existence of an assignment [depends on] minute differences in contractual language that anchor the attorney's interest in . . . the proceeds of the litigation." *Matthews*, 264 Fed. Appx. at 538-39.

The bankruptcy court found that the first requirement of an equitable lien existed when it concluded that under the original retainer agreement, Mirabella owed Shaw Gussis an obligation to pay for the services it reasonably rendered. In determining that the settlement funds were a *res* to which that obligation could attach, however, the court does not appear to have addressed whether there was an understanding amounting to an assignment of a portion of these funds, as Illinois law requires. The court's failure to address that essential point is a legal error that requires remand.

Shaw Gussis relies on *Small v. Beverly Bank*, 936 F.2d 945 (7th Cir. 1991), to contend that an assignment is not required because "equitable liens [also] arise . . . when a court grants equitable relief in light of the parties' relationship and dealings." *Id.*

at 949. Shaw Gussis claims, in effect, that its attorney-client relationship with Mirabella entitles it to payment from the settlement funds. *Small*, however, was not a case about attorney's fees or attorney's liens. Courts considering whether an attorney has an equitable lien on a particular fund have consistently required proof of an equitable assignment. *See, e.g., Matthews,* 264 Fed. Appx. at 538-39; *In re Brass Kettle Rest., Inc.*, 790 F.2d at 576; *McKee-Berger-Mansueto*, 691 F.2d at 836-37; *Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 178, 694 N.E.2d 191, 197 (1998) (finding proof that deceased attorney had established an equitable assignment in settlement funds); *Dep.'t of Pub. Works,* 93 Ill. App. 3d at 394-95, 417 N.E.2d at 1048-49 ("To assert an equitable lien, the attorney must establish the existence of an equitable assignment by his client to him of a portion of a fund.").

Mirabella seeks outright reversal, arguing that Shaw Gussis cannot prove the existence of an equitable assignment. The Court agrees with Mirabella that the original retainer agreement, which makes no reference to the settlement funds, does not include an assignment and thus cannot serve as the basis for a lien on the settlement fund. *See Achs v. Maddox*, 175 Ill. App. 3d 989, 995, 530 N.E.2d 612, 616 (1988) (finding no equitable lien for expenses where agreement calls for monthly reimbursement, and not reimbursement from the fund recovered); *see generally Matthews*, 264 Fed. Appx. at 538 ("[T]he client [must] assign[ ] to the attorney a portion of a fund."); *Home Fed. Sav. & Loan Ass'n of Centralia v. Cook*, 170 Ill. App. 3d 720, 723, 525 N.E.2d 151, 153 (1988) ("[A]n equitable lien on a judgment . . . [requires] an equitable assignment of a portion of the recovery."). Shaw Gussis' original agreement

provided only Mirabella would pay its fees on a monthly basis. Asa result, that agreement does not establish an equitable assignment.

It is possible, however, that Shaw Gussis' December 16, 2008 e-mail to Frank Lara, its contact at Mirabella, may amount to an equitable assignment. The e-mail refers to a "carveout" of the hoped-for $80,000 settlement, which is language suggestive of an assignment. But the ultimate settlement was for $60,000, not $80,000. The bankruptcy court noted this point during its ruling, stating that "[t]he fact that Mirabella might have been willing to pay $20,000 for a settlement on better terms than what were ultimately negotiated does not indicate that they would be willing to offer $20,000 no matter what terms were effectuated in a settlement." May 26, 2009 Tr. 7. That comment, however, does not reflect a finding one way or the other on whether the e-mail amounted to an assignment from whatever amount Shaw Gussis was able to obtain via settlement.

Mirabella contends that the e-mail cannot establish an equitable assignment because it does not include the terms "assign" or "entitle." But courts do not require those specific words when deciding whether an agreement amounts to an equitable assignment. *See, e.g.*, *Home Fed. Sav. & Loan Ass'n of Centralia*, 170 Ill. App. 3d at 724, 525 N.E.2d at 153-54 (finding an equitable assignment where "retainer agreement provides that '[w]e agree to pay . . . a contingent fee of 40% of any monies recovered . . . by . . . settlement or jury verdict.'"); *Achs*, 175 Ill. App. 3d at 994, 530 N.E.2d at 615 ("agreement states . . . that the contingent fee is 'payable as follows: 33 1/3% . . . of whatever . . . [is] recovered from said claim.'"). Rather, Shaw Gussis is required to

establish only that it had an agreement with Mirabella that was "phrased so that the attorney can look directly to the fund for payment of [its] fees." *McKee-Berger-Mansueto,* 691 F.2d at 836; *see also Lewsader*, 296 Ill. App. 3d at 180, 694 N.E.2d at 198 ("an equitable lien [is] created by language indicating that the attorneys were to look directly to the fund . . . for payment.") (internal quotation marks and citation omitted).

Although the terms of the actual settlement ended up being less favorable than the $80,000 proposal authorized in the e-mail, if the document amounted to an equitable assignment of a portion of whatever settlement was achieved, Shaw Gussis may be entitled to recover reasonable fees from the settlement proceeds. *See Wegner v. Arnold*, 305 Ill. App. 3d 689, 696, 713 N.E.2d 247, 252 (1999) (a discharged attorney's "ability to assert any equitable assignment is limited to the amount he is entitled to recover in *quantum meruit* . . . [because] a contingent-fee contract . . . ceases to exist . . . [and] a discharged attorney . . . is limited to [recover] reasonable fees for services rendered."); *Kannewurf v. Johns*, 260 Ill. App. 3d 66, 75-76, 632 N.E.2d 711, 717 (1994).

**Conclusion**

For the foregoing reasons, the Clerk is directed to enter judgment as follows: The case is remanded to the bankruptcy court for further proceedings consistent with this decision.

MATTHEW F. KENNELLY
United States District Judge

Date: December 2, 2009